# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ANTHONY FLORES** | : | **CIVIL ACTION** |
| *Plaintiff* | : | |
| | : | **NO. 17-4848** |
| **v.** | : | |
| | : | |
| **ANDREW CHARLTON,** *et al.* | : | |
| *Defendants* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                                                 AUGUST 12, 2019

# MEMORANDUM OPINION

## INTRODUCTION

Plaintiff Anthony Flores ("Plaintiff") filed a civil complaint against Defendants Andrew Charlton ("Charlton") and Citizens Financial Group, Inc. ("Citizens") (collectively, "Defendants"), asserting claims of hostile work environment and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*; and state-law claims of sexual harassment under the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. §§ 951-963, negligent infliction of emotional distress, intentional infliction of emotional distress, and assault. Before this Court are Defendants' motion for summary judgment on all of Plaintiff's claims filed pursuant to Federal Rule of Civil Procedure ("Rule") 56, [ECF 22], Plaintiff's response in opposition, [ECF 23], and Defendants' reply. [ECF 26]. The issues raised by the parties have been fully briefed and are ripe for disposition. For the reasons set forth below, the motion is granted, and judgment is entered in favor of Defendants.

## BACKGROUND

With their motion, Defendants attached a statement of undisputed material facts which cites to the record, including Plaintiff's deposition. Plaintiff, on the other hand, attempts to cast

doubt on Defendants' version of the facts by asserting purportedly contrary (though frequently inapposite) facts without citing to the record. Notwithstanding, this Court is mindful that at this summary judgment procedural stage, all record evidence and relevant facts must be considered in the light most favorable to the non-moving party, *i.e.*, Plaintiff. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Thus, the relevant facts are summarized as follows:

On May 8, 2014, Plaintiff was initially hired by Citizens, a retail and commercial bank, to work at a Citizens branch inside an Acme supermarket in Newtown, Pennsylvania. In June 2015, Plaintiff was promoted to Assistant Branch Manager at the Acme branch, and oversaw the branch's day-to-day operations, with responsibilities that included "ordering money, making sure audits were in place, managing expectations for the other employees[.]" [ECF 22-2, Flores Dep., at 78:14-16]. Throughout his employment with Citizens, Plaintiff reported directly to and was supervised by Charlton, who divided his time between Citizens' two branches in Newtown branch and had no set schedule at either location. [*Id.* at 114:17-115:5].

Prior to March 2016, Plaintiff had no documented performance issues. On March 10, 2016, however, Charlton issued Plaintiff a verbal warning related to procedural deficiencies observed during a review conducted by Citizens' Operations Manager Lisa Welsh. [*Id.* at 105-06, 111-12]. In May 2016, Citizens' Retail Director Jeff Pearlberg also reviewed the Acme branch and identified several practice deficiencies. [*Id.* at 129-30]. Shortly after Pearlberg's visit, Charlton did not receive a desired promotion. On June 2, 2016, Charlton issued Plaintiff a Final Written Warning for poor performance, the final step in Citizens' progressive discipline model. [*Id.* at 133:17-19].

On June 14, 2016, Charlton conducted what was called a "surprise cash audit"[1] of Plaintiff's cash inventory and found that $140 was missing from Plaintiff's dye packs.[2] Plaintiff called Citizens HR seeking advice on how to proceed in light of the cash discrepancy, and HR recommended that Plaintiff leave

---

[1] Surprise audits are scheduled by management in advance and are conducted at the very beginning or very end of the workday. When an audit is conducted, the cash under an employee's control is counted in the employee's presence.

[2] Dye packs are false cash packs, covered in real cash, which are intended to deter bank robbers by exploding when removed from bank premises. Regarding the cash missing from the dye packs, Plaintiff contends, without citing to materials in the record, that the audit was conducted when Plaintiff arrived after having called out sick the previous day, apparently suggesting that his cash inventory could have been altered without his knowledge. Plaintiff also contends that his cash count was at first found to be accurate, but that Charlton subsequently recounted, and only found cash missing during the recount. Again, however, Plaintiff fails to cite any materials in the record to support these assertions.

the premises. Later, Plaintiff called Citizens' Employee Relations office and asked to discuss Charlton's behavior as Plaintiff's supervisor. Meanwhile, Plaintiff was placed on administrative leave pending the investigation into the failed cash audit. When Citizens investigators interviewed him regarding the audit, Plaintiff elaborated on his complaints about Charlton's behavior, telling the investigators, *inter alia*, that his relationship with Charlton had worsened following the May 2016 visit by Retail Director Pearlberg, after which Charlton had failed to receive a desired promotion. As a result, Plaintiff explained, Charlton "had it out for" Plaintiff and had sought to "get rid of" him. [*Id.* at 245-46]. Plaintiff did not have further contact with Employee Relations regarding his relationship with Charlton. [*Id.* at 186:8-14].

When deposed in this civil action, Plaintiff again described a pattern of sexually inappropriate behavior by Charlton which included, *inter alia*, Charlton's comment while raising his leg in front of Plaintiff that he was "waiting for [Plaintiff] to toss [his] salad;" Charlton's text to Plaintiff of a link to a YouTube video showing a naked man chasing other men; a text message containing a character using a homophobic slur; and a remark, made while standing behind Plaintiff with other Citizens staff, about Plaintiff's "ass." Plaintiff also testified that Charlton would occasionally mimic grabbing Plaintiff's buttocks. Plaintiff indicated that some of these instances were witnessed by other Citizens staff. However, Plaintiff also acknowledged that he never made a formal complaint to Citizens regarding Charlton's behavior and did not discuss Charlton's behavior with any Citizens administrators prior to the failed cash audit. In early July 2016, prior to the conclusion of the cash audit investigation, Plaintiff resigned.

**LEGAL STANDARD**

Rule 56 governs the practice of summary judgment motions. Fed. R. Civ. P. 56. Specifically, this rule provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id*. A fact is "material" if proof of its existence or non-existence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248–49. A party is entitled to judgment as a matter of law if the evidence is so one-sided that one party must prevail. *Id.* at 251–52. As noted, under Rule 56, the court must view the evidence in the light most favorable to the non-moving party. *Galena v. Leone*, 638 F.3d 186, 196 (3d Cir. 2011).

The moving party has the initial burden of identifying evidence that shows an absence of a genuine issue of material fact. *Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d 135, 145–46 (3d Cir. 2004). Once the moving party has shown that there is an absence of evidence to support the non-moving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." *Berckeley Inv. Grp. Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Rather, to defeat a motion for summary judgment, the non-moving party must point to "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). Further, a party may not defeat a motion for summary judgment with evidence that would not be admissible at trial. *Pamintuan v. Nanticoke Mem'l Hosp.*, 192 F.3d 378, 387 (3d Cir. 1999).

Ultimately, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and a court should grant summary judgment where the non-movant's evidence is merely colorable, conclusory, or speculative. *Anderson*, 477 U.S. at 249–50. If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is warranted. *Celotex*, 477 U.S. at 322. In deciding a motion for summary judgment, the Court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 248–49.

**DISCUSSION**

Plaintiff contends that he was subjected to a hostile work environment and retaliation in violation of Title VII, as well as sexual harassment, assault, intentional infliction of emotional distress, and negligent infliction of emotional distress under state law. Defendants contend that there are no genuine disputes of material fact and that Plaintiff's claims fail as a matter of law. For the reasons set forth, this Court agrees with Defendants.

### Plaintiff's Title VII Claims

Plaintiff asserts claims of Title VII hostile work environment and retaliation against both Defendants Charlton and Citizens. The United States Court of Appeals for the Third Circuit (the "Third Circuit"), however, has unequivocally held that *only* employers and not individual employees, can be held liable under Title VII. *Sheridan v. E.I. DuPont de Nemours & Co.*, 100 F.3d 1061, 1078 (3d Cir. 1996) ("Congress did not intend to hold individual employees liable under Title VII."); *see also Nardella v. Phila. Gas Works*, 621 F. App'x 105, 106 n.1 (3d Cir. 2015) ("[T]he District Court properly dismissed [Plaintiff's] Title VII claims against the individual defendants because Title VII provides a cause of action only against employers.") (citing *Sheridan*). Accordingly, Plaintiff's Title VII claims fail as to Charlton as a matter of law. Accordingly, summary judgment is granted in Charlton's favor with respect to Plaintiff's Title VII claims.

Plaintiff Title VII claims against Citizens are not restricted by Title VII's individual-liability limitations, however. As such, his Title VII claims will be addressed in turn as to Citizens *only*.

*Hostile Work Environment*

In the complaint, Plaintiff outlines a series of unwelcome and inappropriate sexual advances and communications by Charlton which included, *inter alia*¸ the noted message containing a link to a video of a naked man chasing other men; a suggestion that Plaintiff "toss [Charlton's] salad;" a text message containing an image of a character using a homophobic slur; comments to Plaintiff expressing Charlton's sexual attraction to male customers; comments about Plaintiff's "ass" made in Plaintiff's presence and in front of other Citizens supervisors; and regular gestures toward "grabbing Plaintiff's buttocks." [ECF 1 at 6]. Plaintiff contends that this behavior gave rise to a hostile work environment predicated on Plaintiff's sex, and that Citizens is liable because some of the alleged offensive remarks were made in the presence of Citizens administrators and, therefore, Citizens was sufficiently put on notice regarding Charlton's behavior. Defendants argue that Plaintiff's allegations, even if true, fail to support a Title VII hostile work environment claim.

"Title VII prohibits sexual harassment that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Tourtellotte v. Eli Lilly & Co.*, 636 F. App'x 831, 845 (3d Cir. 2016) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S 17, 21 (1993)). To establish such a "hostile work environment" claim under Title VII, a plaintiff must prove four elements: (1) the employee suffered intentional discrimination because of his or her sex; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected the plaintiff; and (4) the discrimination would detrimentally affect a reasonable person of the same sex in that position. *Id.* at 845-46 (quoting *Huston v. Procter & Gamble Paper Prods. Corp.*, 568 F.3d 100, 104 (3d Cir. 2009).[3] In order to hold an employer

---

[3] Notably, the Third Circuit has held that the *McDonnell Douglas* burden-shifting framework, which courts apply to most claims of discrimination under Title VII, should not apply to hostile work environment

liable, a plaintiff must also establish a fifth element, *respondeat superior*, *i.e.*, that the defendant knew or should have known about the harassment and did not take prompt remedial action. *Id.* at 846; *Kunin v. Sears Roebuck & Co.*, 175 F.3d 289, 293-94 (3d Cir. 1999). "The question of 'whether an environment is sufficiently hostile or abusive must be judged by looking at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Moody*, 870 F.3d at 215 (quoting *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 270-71 (2001)).

Further, Title VII "do[es] not provide relief for unpleasantness that may be encountered in the work place. Rather [it] provide[s] a remedy only if discrimination seriously and tangibly altered the employee's ability to perform the job or impacted the employee's job benefits." *Walker v. Centocor Ortho Biotech, Inc.*, 558 F. App'x 216, 219 (3d Cir. 2014) (citing *Storey v. Burns Int'l Sec. Servs.*, 390 F.3d 760, 764 (3d Cir. 2004)). "Isolated incidents and 'offhanded comments . . . are not sufficient to sustain a hostile work environment claim,'" *Stucke v. City of Phila.*, 685 F. App'x 150, 153 (3d Cir. 2017) (quoting *Caver v. City of Trenton*, 420 F.3d 243, 262 (3d Cir. 2005), "even if they engender offensive feelings in an employee." *Greer v. Mondelez Global, Inc.*, 590 F. App'x 170, 173 (citing *Breeden*, 532 U.S. at 270). Investigations, separate from any negative consequences that may result from them, also do not generally constitute adverse employment actions. *Henry v. City of Allentown*, 2013 WL 6409307, at *7 (E.D. Pa. Dec. 9, 2013); *see also*

---

claims premised on sexual harassment, because "there can be no legitimate justification for a hostile work environment." *Moody v. Atl. City Bd. of Educ.*, 870 F.3d 206, 213 n.11 (3d Cir. 2017) (referencing the holding in *Pollard v. E.I. DuPont de Nemours Co.*, 213 F.3d 933, 943 (6th Cir. 2000), which distinguished disparate treatment sexual harassment (which is subject to *McDonell Douglas* burden shifting) from hostile work environment sexual harassment which, once proved, cannot be rebutted by any legitimate justification, "and thus recourse to the *McDonnell Douglas* test is not warranted.").

*Boandl v. Geithner*, 752 F. Supp. 2d 540, 564 (E.D. Pa. 2010) (finding that a referral for an investigation that ultimately had no ramifications for the employee did not constitute an adverse employment action).

Defendants argue that Plaintiff has not identified evidence of behavior sufficiently pervasive or severe to support a *prima facie* hostile work environment claim. In order to fall within Title VII's purview, "[t]he alleged harassment must affect a 'term, condition or privilege of employment.'" *Weston v. Pennsylvania*, 251 F.3d 420, 428 (3d Cir. 2001), *abrogated on other grounds as recognized by Burlington N. & Santa Fe Ry. Co v. White*, 548 U.S. 53 (2006). Plaintiff has not alleged, much less shown, how Charlton's alleged offensive conduct altered the "terms and conditions" of Plaintiff's employment. Instead, in response to Defendants' motion, Plaintiff merely reiterates allegations from the complaint, attaching as record evidence several cell phone images which appear to show communications between Charlton and Plaintiff and which contain, in a single image, the word "faggot." His response makes strikingly little effort to comply with Rule 56's requirement that he cite "to particular parts of materials in the record, including," *inter alia*, "depositions, documents, electronically stored information, affidavits or declarations," etc. Fed. R. Civ. P. 56(c)(1)(A). As such, his response fails, as a matter of law, to demonstrate that any genuine dispute of material fact exists with respect to his allegations, or that Citizens is not entitled to judgment as a matter of law. Though Plaintiff might have intended to establish that the "terms and conditions" of his employment were altered when he resigned, any such argument is undermined by his acknowledgment that he "resigned because [he] did not want to be fired for theft" (and not, therefore, because of discrimination against him). [ECF 22-2 at 280:1-3]. Accordingly, summary judgment is granted with respect to Plaintiff's hostile work environment claim against Citizens.

*Retaliation*

Plaintiff also asserts a Title VII retaliation claim against Citizens. Unlike Plaintiff's hostile work environment claim, his retaliation claim is subject to the *McDonnell Douglas* burden-shifting analysis. *Moore v. City of Phila.*, 461 F.3d 331, 342 (3d Cir. 2006).[4] To establish a *prima facie* case of retaliation, "a plaintiff must tender evidence that: '(1) [Plaintiff] engaged in activity protected by Title VII; (2) the employer took an adverse employment action against [Plaintiff]; and (3) there was a causal connection between [Plaintiff's] participation in the protected activity and the adverse employment action.'" *Id.* at 340-41 (quoting *Nelson v. Upsala Coll.*, 51 F.3d 383, 386 (3d Cir. 1995)). An "adverse employment action" in the context of a retaliation claim is an action that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 68.

Defendants assert that Plaintiff's retaliation claim fails because, *inter alia*, Plaintiff has not put forth any evidence that he engaged in a protected activity, or that Citizens took an adverse employment action against him. Rather, Defendants contend, Plaintiff's claim of retaliation stems from a "belief that Charlton retaliated against him [by conducting] the surprise audit as payback for making [Charlton] look bad in front of Pearlberg." [ECF 22 at 35]. In response, Plaintiff makes several bald assertions of fact, apparently intended to cast suspicion on Charlton's motivations for conducting the surprise cash audit, yet fails to establish that Plaintiff engaged in any protected activity. For example, Plaintiff argues that the audit was "questionable at best" and

---

[4] Under the *McDonnell Douglas* burden-shifting framework, once a plaintiff establishes a *prima facie* case of retaliation, "the burden shifts to the employer to provide a legitimate non-retaliatory reason for its conduct. If it does so, the burden shifts back to the plaintiff 'to convince the factfinder both that the employer's proffered explanation was [pretextual] and that retaliation was the real reason for the adverse employment action.'" *Carvalho-Grevious v. Del. State Univ.*, 851 F.3d 249, 257 (3d Cir. 2017) (quoting *Moore*, 461 F.3d at 342).

"a clear tactic used to display Plaintiff in a false light." Such a response falls far short of satisfying the first element of a Title VII retaliation claim. Indeed, the record appears to contain no support for any purported protected activity—Plaintiff freely admitted during his deposition that he "never made a complaint of any of these instances [of alleged sexual harassment] during [his] employment at Citizens." [22-2 at 178:5-8]. Instead, Plaintiff testified that Charlton had "had it out for him" not because Plaintiff engaged in any protected activity, but because Charlton blamed Plaintiff for Charlton's failure to receive a desired promotion. [*See, e.g.*, ECF 22-2 at 245:14-246:9]. Further, Plaintiff fails again to comply with the requirement at summary judgment that he "cite to particular," or even any, "parts of the record." Fed. R. Civ. P. 56. His only apparent attempt to identify an adverse employment action, regarding his allegation that Citizens permitted his "working conditions to become so intolerable that a reasonable person in his position would have felt compelled to resign," is unsupported by evidence in the record. For the reasons discussed above, these bare allegations are insufficient to meet Plaintiff's burden in opposing summary judgment. Accordingly, summary judgment is granted for Citizens with respect to Plaintiff's retaliation claim against it.

### Plaintiff's State Law Claims

In addition to his federal claims, Plaintiff asserts claims of sexual harassment under the PHRA, and negligent infliction of emotional distress, intentional infliction of emotional distress, and assault under state law. The Third Circuit has established that, "absent extraordinary circumstances, where the federal causes of action are dismissed the district court should ordinarily refrain from exercising pendent jurisdiction over the state law claims." *Bright v. Westmoreland Cty.*, 380 F.3d 729, 751 (3d Cir. 2004) (quotations omitted); *see also* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if the district

court has dismissed all claims over which it has original jurisdiction."). As both Plaintiff and Charlton appear to be Pennsylvania citizens, and neither party has suggested that complete diversity exists, this Court appears to lack original jurisdiction over Plaintiff's state-law claims. Accordingly, having dismissed Plaintiff's federal claims against all parties, this Court declines to exercise supplemental jurisdiction over Plaintiff's state-law claims.

**CONCLUSION**

As discussed above, Plaintiff has largely failed to meet his burden in opposing summary judgment under Rule 56 by failing to "cite to particular parts of materials in the record" to establish that any genuine dispute of material fact exists or that Defendants are not entitled to judgment as a matter of law on each of Plaintiff's claims. Therefore, for the foregoing reasons, Defendants' motion for summary judgment is granted, and Plaintiff's claims are dismissed. An Order consistent with this Memorandum Opinion separately follows.

NITZA I. QUIÑONES ALEJANDRO, U.S.D.C. J.